**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Harry Lewis Benton, Jr., | No. CV-20-01846-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Harry Lewis Benton, Jr.'s Application for Social Security Disability Insurance ("SSDI") benefits by the Social Security Administration ("SSA") under the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) seeking judicial review of that denial and an Opening Brief (Doc. 32). Defendant SSA filed an Answering Brief (Doc. 37), and Plaintiff filed a Reply (Doc. 40). The Court has reviewed the briefs and Administrative Record ("AR") (Doc. 26) and reverses the Administrative Law Judge's ("ALJ") decision (AR 48-60) and remands this matter for calculation of benefits for the reasons addressed herein.

**I.    Background**

Plaintiff filed an Application for SSDI benefits on December 1, 2016, alleging a disability onset date that was later amended to October 1, 2017. (Doc. 32 at 2). After state agency denials, ALJ Earl C. Cates issued a decision denying Plaintiff's Application on March 5, 2018. (AR 181-99). Thereafter, the Appeals Council granted Plaintiff's Request for Review of the ALJ's decision and remanded the case to the ALJ for further proceedings.

(*Id.* at 200-05). A new hearing was held and a new unfavorable opinion issued on April 5, 2019. (*Id.* at 48-60). After state agency denials, this appeal followed. (Doc. 1).

Plaintiff argues that he has a number of physical and mental impairments, some stemming from his years of military service including deployments to Kuwait and Iraq. (Doc. 32 at 5, 10). Plaintiff experienced multiple improvised explosive device ("IED") exposures during his military service. (AR 126). He received a medical discharge from the military in 2016 and received a 100% disability rating from the Department of Veterans Affairs. (*Id.* at 75-76, 85, 568). Plaintiff testified that his primary medical condition was PTSD and that he experienced "flashbacks" to his time in combat about three to four times per week. (AR 91, 125-26). Following a flashback, Plaintiff stated that he had to go to his room, close the blinds, and rest for around 30 minutes. (*Id.* at 127). Plaintiff testified that he also experienced bilateral knee pain, bilateral shoulder pain, back pain, headaches, and hypertension. (*Id.* at 125).

After considering the medical evidence and opinions, the ALJ evaluated Plaintiff's disability claim based on the severe impairments of chronic cervical spine pain with radiculopathy, chronic low back pain syndrome, post-traumatic stress disorder ("PTSD"), unspecified depressive disorder, alcohol use disorder, and cannabis use disorder. (AR 52). While the ALJ noted that Plaintiff's severe impairments limited his ability to perform basic work activities and determined that Plaintiff could not perform his past work as a police officer, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform medium work, but with a number of limitations. (*Id.* at 52).

Plaintiff argues that the ALJ erred in rejecting the opinions of treating provider, Dr. Sergey Sheleg, M.D., without giving specific and legitimate reasons for doing so, and in purporting to give great weight to consultative examiner, Dr. Rabara, but failing to account for his assessment of Plaintiff's limitations. (Doc. 32). Plaintiff also argues the ALJ erred in rejecting his symptom testimony in the absence of clear and convincing reasons for doing so. (*Id.*) The Commissioner argues that the ALJ's opinion is free of harmful error and must be affirmed. (Doc. 37). The Court has reviewed the medical record and will

discuss the pertinent evidence in addressing the issues raised by the parties.

## II. Legal Standards

An ALJ's factual findings "shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. §404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R.

§ 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

## III.  Analysis

Plaintiff argues that the ALJ erred in rejecting the opinions of treating provider, Dr. Sergey Sheleg, M.D., without giving specific and legitimate reasons for doing so, and in purporting to give great weight to consultative examiner, Dr. Rabara, but failing to account for his assessment of Plaintiff's limitations. (Doc. 32). Plaintiff also argues the ALJ erred in rejecting his symptom testimony in the absence of clear and convincing reasons for doing so. (*Id.*) The Commissioner argues that the ALJ's opinion is free of harmful error and must be affirmed. (Doc. 37). The Court will address these issues in turn.

### A.  Medical Opinions

When evaluating medical opinion evidence in cases filed prior to March 27, 2017, "[t]he ALJ must consider all medical opinion evidence," and there is a hierarchy among the sources of medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), *as amended* (Apr. 9, 1996).

Generally, opinions of treating physicians are entitled to the greatest weight; opinions of examining, non-treating physicians are entitled to lesser weight; and opinions of non-examining physicians are entitled to the least weight. *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).[1] While greater weight is generally afforded to treating physicians, a "treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." *Rodriguez v. Bowen*, 876 F.2d 759, 761–62 & n. 7 (9th Cir. 1989).

When examining doctors "provide independent clinical findings that differ from the

---

[1] The regulations provide that the amount of weight given to any medical opinion depends on a variety of factors, namely: whether the physician examined the claimant; the length, nature, and extent of the treatment relationship (if any); the degree of support the opinion has, particularly from medical signs and laboratory findings; the consistency of the opinion with the record as a whole; the physician's specialization; and "other factors." 20 C.F.R. §§ 404.1527(c)(1)–404.1527(c)(6).

- 4 -

findings of the treating physician, such findings are themselves 'substantial evidence.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007) (*quoting Orn*, 495 F.3d 625, 632) (other citations omitted). "As is the case with the opinion of a treating physician, the Commissioner must provide clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician." *Lester*, 81 F.3d at 830–31. "And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)).

An ALJ meets the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012 (quoting *Reddick*, 157 F.3d at 725). This means that an ALJ must "do more than state conclusions." *Id.* Rather, the ALJ "must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* The Ninth Circuit requires this exacting standard "because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'" *Id.* (*quoting Orn*, 495 F.3d at 633). The Court will not reverse for an error that is "inconsequential to the ultimate nondisability determination" or where the ALJ's "path may reasonably be discerned, even if the [ALJ] explains [her] decision with less than ideal clarity." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (citing *Alaska Dept. of Envtl. Conservation v. E.P.A.*, 540 U.S. 461, 497 (2004)).

### 1. Dr. Sergey Sheleg, M.D.

The ALJ considered the medical opinions and treatment notes of Dr. Sergey Sheleg, M.D., Plaintiff's treating physician. In December 2017, Dr. Sheleg completed an assessment of Plaintiff's impairments, finding that due to "chronic headache, chronic bilateral knee pain, chronic neck pain, chronic back pain, chronic bilateral ankle pain, history of bilateral rotator cuff surgeries, ulnar nerve pain, obstructive sleep apnea, PTSD,

and traumatic brain injury," Plaintiff could sit, stand, or walk less than two hours in an eight-hour workday and would need to rest every 21 to 45 minutes. (AR 1068). Dr. Sheleg opined that Plaintiff's impairments would cause him to be off task greater than 21% of an eight-hour day and that he would be absent from work six or more days per month. (*Id.* at 1069). In January 2019, Dr. Sheleg completed an updated assessment with similar findings. (*Id.* at 1091-92). The Vocational Expert ("VE") testified that an individual could only miss one day of work per month to maintain competitive employment. (AR 81-82). Therefore, Dr. Sheleg's opinion that Plaintiff's impairments would cause him to miss six or more days per month would preclude all employment based on the VE's testimony. (*Id.* at 1069).

The ALJ gave Dr. Sheleg's opinions "less weight," finding that they were inconsistent with the greater record but citing to no portion of the record when making this determination. (AR 56). The ALJ then discussed a single treatment note from October 2017, stating that Plaintiff "denied gross musculoskeletal or neurological deficits at that time, and exam findings were mostly limited to lumbar paraspinal tenderness and mildly limited range of motion, as well as some knee crepitus but with full and pain free knee range of motion." (*Id.*; citing 907, 909).

What the ALJ does not discuss is how the single exam finding he cites discounts all of Dr. Sheleg's opinions. Nor does the ALJ find that the exam findings he cited are somehow inconsistent with the opinions of Dr. Sheleg. The ALJ does not attempt to explain how the treatment note citing lumbar paraspinal tenderness which caused a limited range of motion and knee crepitus could be inconsistent with Dr. Sheleg's opinions, which included findings of lumbar spine pain and knee impairments that would limit his ability to work. Neither the Commissioner nor the Court can attempt to interpret what the ALJ was thinking here. *See Bray v. Comm'r of Soc. Sec.*, 554 F.3d 1219, 1226 (9th Cir. 2009) (the Court reviews only the "reasoning and factual findings offered by the ALJ–not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking").

The Court finds that the ALJ did not base his decision on substantial evidence. If

the ALJ was implying that Plaintiff had some improvement in symptoms at this specific appointment, he needed to explain how those improvements were at odds with the opinions of Dr. Sheleg and the other medical evidence of record. As the Ninth Circuit has previously discussed, the presence of waxing and waning of symptoms during the treatment period do not necessarily indicate an ability to maintain employment, nor do some symptoms improving negate a treating provider's opinions. However, the key requirement in this scenario is for the ALJ to explain why evidence of improvement in certain areas negates the opinions of a provider. *See Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) (stating that a "[provider's] statements must be read in context of the overall diagnostic picture he draws. That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace"); *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (occasional signs of improvement do not undermine consistent impairments in the overall record). The ALJ did not so explain here.

      The only other reason the ALJ purportedly used to give little weight to this opinion had to do with Dr. Sheleg's statement that Plaintiff was "significantly disabled" as a result of his military service. (AR 56, *citing* 1028-1029). The ALJ took issue with this opinion, stating that the disability determination is one that resides solely with the Commissioner. (*Id.*) While the ALJ is correct in theory, Dr. Sheleg provided far more than an isolated opinion as to Plaintiff's disability status. Dr. Sheleg completed two questionnaires related to the functional assessment of Plaintiff's work-related limitations, based on a longstanding treatment relationship. The Court recognizes that a physician's statement regarding issues reserved for the Commissioner, such as whether a claimant is disabled, is not entitled to special deference. *See* 20 C.F.R. § 404.1527(d) (special significance is not given to the source of an opinion on issues reserved to the Commissioner). However, Dr. Sheleg did far more than simply state that Plaintiff was disabled, and those opinions were entitled to the weight due an opinion of a treating physician. *See Garrison*, 759 F.3d at 1012. This was not a proper reason to discount the opinion of a treating physician.

To reject the opinion of Dr. Sheleg, the ALJ needed to "set[] out a detailed and thorough summary of the facts and conflicting clinical evidence, stat[e] his interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012 (quoting *Reddick*, 157 F.3d at 725). The ALJ must "do more than state conclusions." *Id.* The Court finds that the relatively brief discussion of Dr. Sheleg's work-preclusive opinions, with correspondingly sparse citations to the record and no analysis of those selective records, is not an adequate basis to discount the opinion of a treating physician. The ALJ did not support his decision with substantial evidence, and therefore, the Court finds error here. *See Garrison*, 759 F.3d at 1012 (quoting *Reddick*, 157 F.3d at 725) (the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings"). Moreover, this was not mere harmless error, as the VE testified that the limitations opined by Dr. Sheleg would preclude all employment.

### 2. Dr. Michael Rabara, Psy.D.

Dr. Rabara, a consultative physician, opined that Plaintiff would have marked difficulty in interacting with the public, with his supervisors, and in responding appropriately to usual workplace situations and changes in routine. (AR 1088). The VE testified that Plaintiff would not be able to sustain employment if he had only an occasional ability to interact appropriately with supervisors. (*Id.* at 105). The ALJ concluded that Dr. Rabara's opinion "was given more weight based on the objective nature of Dr. Rabara's evaluation and his consistency with the greater record, to the extent it supports the residual functional capacity." (*Id.* at 58). But, had the ALJ actually given this opinion the weight stated, he would have found Plaintiff disabled based on the VE testimony.

As Dr. Rabara's opinion formed the basis for the VE testimony that Plaintiff's impairments would preclude all work, there is clear asymmetry between the ALJ's finding that Dr. Rabara's opinions are objective and consistent with the greater record, and his determination that Plaintiff can perform a wide range of medium work. Rather than give great weight to this opinion as stated, the ALJ essentially discounted it. *See Vasquez v.*

*Astrue*, 2013 WL 491977, at \*5 (D. Ariz. Feb. 8, 2013) (citing *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) (remanding for an award of benefits where "the primary piece of evidence that [the ALJ] relied on does not support the propositions for which it is cited" and concluding "that the ALJ failed to build the requisite logical bridge between the evidence and her conclusion")).

The ALJ ultimately gave the opinion of Dr. Gordon, a consultative examiner, the "most weight." (AR 57). Dr. Gordon, whose opinion stated that he did not review any portion of the medical record, opined that Plaintiff did not have work-preclusive impairments. (*Id.* at 1071). In giving greatest weight to this opinion, the ALJ did not provide citations to the record or any other support for his conclusions. This was not proper. And while the Commissioner provides citations to the record to bolster her arguments, the ALJ did not cite to these records in weighing the medical opinion testimony and the Court cannot consider them as a basis to affirm the ALJ. *See Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014) ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely."); *see also Bray v. Comm'r of Soc. Sec.*, 554 F.3d 1219, 1226 (9th Cir. 2009) (the Court reviews only the "reasoning and factual findings offered by the ALJ–not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking"). The ALJ did not support his decision with substantial evidence, and therefore, the Court finds error here. *See Garrison*, 759 F.3d at 1012 (quoting *Reddick*, 157 F.3d at 725) ("substantial evidence [requires] setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings"). Moreover, this was not mere harmless error, as the VE testified that Plaintiff would not be able to sustain employment if he had only an occasional ability to interact appropriately with supervisors, as opined by Dr. Rabara. (*Id.* at 105).

**B.     Plaintiff's Symptom Testimony**

Plaintiff also argues that the ALJ erred in discounting his subjective symptom

testimony without providing clear and convincing reasons supported by substantial evidence for doing so. (Doc. 32 at 21-26). The Commissioner argues that the ALJ did not err in discounting Plaintiff's symptom testimony. (Doc. 37).

An ALJ must evaluate whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal citations omitted)). In evaluating a claimant's pain testimony after a claimant produces objective medical evidence of an underlying impairment, "an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005). However, the ALJ may "reject the claimant's testimony about the severity of [the] symptoms" provided that the ALJ also explains his decision "by providing specific, clear, and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 488–89 (9th Cir. 2015). The ALJ may also consider "'whether the claimant engages in daily activities inconsistent with the alleged symptoms.'" *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007)). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment," *Id.* at 1113, or where they suggest that "later claims about the severity of [the] limitations were exaggerated," *Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009).

Recognizing that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations," the Ninth Circuit has held that "[o]nly if [a plaintiff's] level of activity were inconsistent with [a plainitff's] claimed limitations would these activities have any bearing on [her] credibility." *Reddick v. Chater*, 157 F.3d at 722 (citations omitted); *see also Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir.2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from

other persons . . . and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.").

Plaintiff testified that he was unable to work due to symptoms from his various mental health and physical impairments. He complained of constant knee pain and difficulty managing stairs. He testified to anxiety, depression, social withdrawal, PTSD, and irritability. (AR 55). The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the symptoms alleged, but that his statements concerning the intensity, persistence, and limiting effects of those symptoms were not consistent with the medical evidence, including his own statements and testimony regarding activities of daily living. (*Id.*)

The ALJ found Plaintiff's symptom testimony to be not credible because the ALJ believed Plaintiff didn't want to work, because his daily activity levels were inconsistent with his complaints, and apparently because he used marijuana and alcohol. (*Id.*) The Court will review these portions of the decision in turn.

The ALJ's personal opinions about Plaintiff's desire to work are present in the hearing transcript and the decision itself. At the hearing, the ALJ asked Plaintiff why he had not been retrained for a different job after his military service, stating to him that "it seems like you just kind of shut down. You just want to be retired." (*Id.* at 135). In the decision, after acknowledging that Plaintiff was discharged from the Military with a 100% disability rating by the Department of Veterans Affairs[2], the ALJ stated that "He is not retired and it would appear he does not want to work any longer, which does not equate to disability." (*Id.* at 55). This was an improper basis to reject Plaintiff's symptom testimony.

As an initial matter, the ALJ does not cite to anything in the record that would reflect that Plaintiff did not want to work or that he just wanted to "be retired." This was pure speculation on behalf of the ALJ, which is not proper. *Benecke v. Barnhart*, 379 F.3d 587,

---

[2] "The ALJ must consider the VA's finding in reaching his decision and the ALJ must ordinarily give great weight to a VA determination of disability." *Luther v. Berryhill*, 891 F.3d 872, 876 (9th Cir. 2018). "However, a VA rating is not conclusive and does not necessarily compel the SSA to reach an identical result." *Id.*

594 (9th Cir. 2004) ("Sheer disbelief is no substitute for substantial evidence."). This was not a valid reason to discount Plaintiff's testimony.

As to the discussion of Plaintiff's daily activities, the ALJ found his activity levels to be inconsistent with his subjective complaints. In support of this finding, the ALJ stated Plaintiff was able to complete self-care activities "such as meals, hygiene and light housework." (AR 55). However, the ALJ also acknowledged that Plaintiff's "wife does almost all of the shopping, financial management, and cooking." (*Id.*) The ALJ also stated that Plaintiff "is not confined to bed," and that "he has a medical marijuana card and smokes marijuana twice a week. He also drinks vodka weekly." (*Id.*) The single citation to the record in this section of the opinion follows a statement that Plaintiff has managed to limit his drinking since he left the military. (*Id.* at 1002).

The Court cannot meaningfully review the ALJ's finding that Plaintiff's daily activities are inconsistent with his symptom testimony as the ALJ does not tie any of these activities—meals, hygiene, and light housework—to any of the work-preclusive specific symptoms alleged. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (ALJ must "set forth the reasoning behind its decisions in a way that allows for meaningful review"). Moreover, the Court is not aware of a requirement that a plaintiff be "confined to bed" in order to be found disabled. Nor does the ALJ explain how Plaintiff's medical marijuana and alcohol use discredits his symptom testimony, especially considering that the ALJ found alcohol use disorder and cannabis use disorder to be severe impairments. (AR 52). The ALJ's failure to cite to the record when making the findings with respect to Plaintiff's symptom testimony make it impossible for the Court to meaningfully review this determination.

Following the discussion of Plaintiff's daily activities, the ALJ discusses some medical records in a single paragraph, but without any analysis or application to Plaintiff's symptoms. (*Id.* at 55). Nor does this section conclude with any relation back to Plaintiff's symptom testimony. The Court cannot meaningfully review this discussion of medical evidence, as there is no link whatsoever to Plaintiff's subjective symptom testimony.

Courts have repeatedly reversed an ALJ's decision where there is discussion of medical evidence but no connection to the rejection of symptom testimony. *Nelson v. Comm'r of Soc. Sec. Admin.*, 2020 WL 1510332, at *3 (D. Ariz. Mar. 30, 2020); *see also Guerrero v. Berryhill,* 2018 WL 5276415, at *4 (D. Ariz. Oct. 24, 2018) (rejecting agency rationale where "the ALJ did not link this medical evidence to her credibility findings . . . [but] simply recited the medical evidence, which is not sufficient"); *Bridges v. Commr. of Soc. Sec.*, 2018 WL 4282826, at *3 (D. Ariz. Sept. 7, 2018) ("Nor did [the ALJ] explain how Plaintiff's treatment records undermine her symptom testimony."). Therefore, the Court finds that the ALJ committed error by failing to provide clear and convincing reasons for discounting Plaintiff's credibility.

**IV. Remand**

Once a court has determined an ALJ's decision contains harmful error, the decision whether to remand a case for additional evidence or for an award of benefits is within the discretion of the court. *Reddick*, 157 F.3d at 728; *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of benefits, reversal is appropriate." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981).

"Where the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, we credit that opinion 'as a matter of law.'" *Lester*, 81 F.3d at 834 (quoting *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir. 1989)). Courts apply the credit-as-true rule and remand for benefits when: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020; see also *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000); *Smolen*, 80 F.3d at 1292. "We have, in a number of cases, stated or implied that it would

be an abuse of discretion for a district court not to remand for an award of benefits when all of these conditions are met." *Garrison*, 759 F.3d at 1020.

Regarding the first element of the test, the Court is aware of no outstanding issues that must be further developed before a determination of disability can be made. The Court finds that the record here is fully developed, and further administrative proceedings are unnecessary.

The second element of the test is also satisfied. As discussed at length above, the ALJ failed to provide legally sufficient reasons for giving little weight to treating physician Dr. Sheleg's medical opinions and for his seemingly mistaken weight given to Dr. Rabara's opinion. Moreover, the ALJ committed harmful error by failing to provide adequate reasons for discounting Plaintiff's subjective symptom testimony, which the Court finds to be consistent with the limitations opined by Drs. Sheleg and Rabara.

With respect to the third part of the test, the Court finds the ALJ would be required to find Plaintiff disabled if the rejected opinions were credited as true. Importantly here, the VE testified that, based on the improperly rejected opinions of Dr. Sheleg, Plaintiff would not be able to perform any work. (AR 81-82, 1069). Crediting Dr. Sheleg's opinions as true, the Court finds that the ALJ would be required to find Plaintiff disabled based on the testimony of the VE.[3] Therefore, the three-part test is satisfied here and, consequently, a remand for an award of benefits is appropriate.

## V.  Conclusion

For the foregoing reasons, the Court finds the ALJ committed harmful error by failing to provide legally sufficient reasons for assigning little weight to Dr. Sheleg's opinions, for purporting to give "greater weight" to the opinion of Dr. Rabara when the VE found that one of the opined limitations would preclude all work (AR 105), and in finding Plaintiff's symptom testimony not credible without providing substantial evidence. The Court further finds that based on these errors, and in finding that the credit-as-true elements

---

[3] Case law is not clear on whether a consultative examining physician's opinion can be credited-as-true. However, it is immaterial here whether the Court credits Dr. Rabara's opinions as true, as the Court can clearly credit the opinions of treating physician, Dr. Sheleg. *See Lester*, 81 F.3d at 834.

have been met, remand for an award of benefits is warranted.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **REVERSED,** and this case is **REMANDED** to the Social Security Administration for an award of benefits. The Clerk of Court is directed to enter judgment accordingly.

Dated this 9th day of June, 2022.

_____
G. Murray Snow
Chief United States District Judge